UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------ x
NEELU PAL,                                                    :
                                                             :
                       Plaintiff,                            :
                                                             :
          v.                                                 :        3:24-CV-00792 (SFR)
                                                             :
JAMES N. TALLBERG ET AL,                                     :
                                                             :
                       Defendant.                            :
------------------------------------------------------------ x
```

**MEMORANDUM & ORDER**

Plaintiff Neelu Pal ("Pal") filed a seven count Amended Complaint against three

categories of Defendants: James N. Tallberg, Andrew J. Glass, Patrick Allen, and Karsten &

Tallberg, LLC (collectively the "Private Attorney Defendants"), Gary Mecozzi, Paul Ferencek,

and Richard Colangelo (collectively the "State's Attorney Defendants"), and John Does A-Z

as well as Doe Corporations A-Z (the "Doe Defendants"). The Private Attorney Defendants

and State's Attorney Defendants have moved to dismiss the relevant counts against them under

Rule 12(b)(6). For the reasons set forth below, I grant the motions and dismiss all claims

against all Defendants.

I.      **BACKGROUND**

        A.      **Procedural Background**

        Pal filed her initial Complaint in this case on April 30, 2024. Compl. ECF No. 1. On

May 13, 2024, the Court[1] found this case to be closely related to *Pal v. Cipolla*, No. 18-cv-

00616 (D. Conn.), a case that was about to go to trial at the time this case was filed. *See* ECF

---

[1] The Honorable Michael P. Shea presided over this action before it was transferred to me on
January 31, 2025. ECF No. 40.

No. 16. Accordingly, the Court stayed this case. *Id.* On August 2, 2024, the Court reviewed Pal's Complaint and "identified several potential defects with her claims, including potential failures to allege facts that show that the claims are plausible." ECF No. 16. The Court permitted Pal to file an amended complaint. On September 3, 2024, Pal filed her First Amended Complaint ("FAC"), ECF No. 17.

On November 12, 2024, the Court issued an order reviewing the FAC. The Court dismissed, with prejudice, Plaintiff's fifth and seventh claims for relief in the FAC, as well as her claims for injunctive relief and declaratory relief and for damages against the State's Attorney Defendants in their official capacities. ECF No. 27. That order also lifted the stay on responses from the Defendants. *Id*. On December 12, 2024, Defendants Tallberg, Glass, Allen, and the Law Firm of Karsten & Tallberg[2] filed a motion to dismiss and accompanying memorandum of law. ECF Nos. 31. 31-1. On January 10, 2025, Defendants Colangelo, Mecozzi, and Ferencek, filed a motion to dismiss and accompanying memorandum of law. ECF Nos. 37, 37-1. On January 31, 2025, this case was transferred to me. ECF No. 40. On March 14, 2025, Pal filed a Motion for Preservation of Evidence to compel the Connecticut State Attorney's Office to preserve evidence related to this matter. ECF No. 43.

On March 14, 2025, Pal filed a Second Amended Complaint ("SAC") that appears to be identical to the FAC other than (1) the SAC names Karsten & Tallberg, LLC as defendant in the case caption rather than the "Law Firm of Karsten & Tallberg" and (2) the SAC does not attach a letter addressed to the Wilton Police Chief that was attached as Exhibit 2 to the FAC. ECF No. 44.

---

[2] Pal initially named as defendant the "Law Firm of Karsten & Tallberg."

On March 14, 2025, Pal filed her memorandum in opposition to the Private Attorney Defendants' Motion to Dismiss. ECF No. 45. On March 14, 2025, Pal filed a memorandum in opposition to the State's Attorney Defendants' Motion to Dismiss. ECF No. 46. On March 19, 2025, the State's Attorney Defendants filed a Reply to Pal's memorandum in opposition to their Motion to Dismiss the FAC. ECF No. 47. On March 28, 2025, the Private Attorney Defendants filed a Reply to Pal's memorandum in opposition to their Motion to Dismiss the SAC. ECF No. 48. On July 10, 2025, the Private Attorney Defendants filed a Motion to Dismiss the SAC, relying upon the arguments in its memorandum of law to dismiss the FAC. ECF No. 51. On July 31, 2025, Pal filed her memorandum in opposition to the Private Attorney Defendants' motion to dismiss the SAC. ECF No. 55. On August 1, 2025, the State's Attorney Defendants filed a reply to Pal's Response to the State's Attorney Defendants' Second Motion to Dismiss the SAC. ECF No. 56. On August 7, 2025, the State's Attorney Defendants filed a renewed motion to dismiss the SAC, relying upon the arguments in its memorandum of law to dismiss the FAC. ECF No. 58. On August 28, 2025, Pal filed a memorandum in opposition to the renewed motions to dismiss, relying upon the arguments made in her previously filed memoranda of law. ECF No. 60.

### B.    Factual Background

Pal is a pro se litigant who has filed four cases in this court, including this one. *See* D. Conn., No. 18-cv-00616, No. 20-cv-00013, and No. 20-cv-00630. (The final case, *Pal v. Bryson*, No. 20-cv-00630, was consolidated with *Pal v. Canepari*, No. 20-cv-00013.) Pal filed this particular action as trial was approaching in *Pal v. Cipolla*.

In brief, the SAC alleges that in 2019 Pal contacted Defendant Colangelo to request an independent investigation by the State's Attorneys Office of officers of the Town of Wilton

Police Department and emergency medical technicians of Wilton Ambulance for the actions that are the subject of *Pal v. Cipolla*. Pal alleges civil rights and state tort violations based on her detention or arrest and ensuing events that took place at her home and, subsequently, on the way to the hospital in April 2015. The SAC alleges that although Colangelo assigned an investigator, Defendant Mecozzi, to investigate, no real investigation was undertaken, and, when she inquired, she was informed by Colangelo that the investigation was ongoing as late as July 2020. *Id.* at 3.

The SAC further asserts that in 2023, Defendants Tallberg, Glass, and Allen filed a copy of a letter from an assistant state's attorney, Defendant Ferencek, on the docket in *Pal v. Cipolla*. According to the SAC, the letter, which was addressed to Pal and dated in April 2020, "falsely states that Pal's complaint relating to" the April 2015 incident involving the Wilton police and EMTs "had been investigated and deemed baseless." SAC 3.[3] The SAC asserts that the Private Attorney Defendants used the letter to seek dismissal of *Pal v. Cipolla*, and Pal never received the letter or any other information about the disposition of her complaint to Colangelo. SAC 3-4. The SAC further claims that the "deliberate failure by the Connecticut State's Attorneys" to investigate Pal's complaints was discriminatory and was based on her gender, national origin, and perceived religion. *Id.* at 4. Pal "is a woman of South Asian origin,

---

[3] The letter, which is attached to Pal's complaint, states: "At Attorney Colangelo's request, I have carefully and independently reviewed all available documents pertaining to the incident which resulted in your arrest that day, including witness statements and policy body-worn camera footage. Unfortunately, these materials do not corroborate your claims, and therefore, without such supportive evidence, I am unable to conclude that probable cause exists that the persons you accuse of wrongdoing committed criminal activity. Accordingly, this office will not be filing any criminal charges against them." ECF No. 44-1, at 1.

while all the persons complained about and the attorneys and investigators themselves[] are White males." *Id.*

## II.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III.    DISCUSSION

The SAC contains seven counts: (1) Count One alleges denial of Pal's rights under the Equal Protection Clause of the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, and names the State's Attorney Defendants and "Doe Defendants" in their individual capacities; (2) Count Two cites 42 U.S.C. § 1983 and § 1981, also alleges discrimination, and names "all defendants" their individual capacities; (3) Count Three alleges abuse of process and names "all defendants" in their individual capacities; (4) Count Four alleges civil rights conspiracy by "all defendants" in their individual capacities; (5) Count Five alleges fraudulent concealment by "all defendants" in their individual capacities; (6) Count Six alleges intentional

infliction of emotional distress by "all defendants" in their individual capacities; and (7) Count

Seven asserts a claim for "assumption of liability" by the State of Connecticut for the actions

of the State's Attorney Defendants.

Pal seeks various damages, "injunctive relief enjoining the defendants from

discriminating against minority, female victims of sexual assault and other crimes of violence,"

and a declaratory judgment "that the investigation(s) conducted by" the State's Attorney

Defendants "were sham investigations and based on false and deliberate failures to obtain

relevant victim witness statements and evidence." ECF No. 44, at 37-38.

The SAC contains several claims that were dismissed with prejudice by the Court in its

ruling on the FAC. In particular, in reviewing the FAC, the Court ordered that "the plaintiff's

fifth and seventh claims for relief, as well as her claims for injunctive and declaratory relief

and for damages against the State's Attorney Defendants in their official capacities, are

dismissed with prejudice." ECF No. 27. Accordingly, I dismiss those claims from the SAC as

well. That leaves claims against the Private Attorney Defendant, the State's Attorney

Defendants, and the Doe Defendants, all in their individual capacities. I examine the claims

against each set of defendants in turn.

### A.    Private Attorney Defendants

With the SAC's fraudulent concealment claim (Count Five) dismissed, the SAC brings

three different claims against the Private Attorney Defendants: an abuse of process claim

(Count Three), a conspiracy to violate Civil Rights claim (Count Four), and an intentional

infliction of emotional distress claim (Count Six).[4] *See* SAC. The Private Attorney Defendants

---

[4] Counts Three, Four, and Six are the only counts that name the Private Attorney Defendants.
Counts Two is described as "Against all Defendants," but proceeds to name and discuss only the

argue that Pal's claims are barred by the litigation privilege, that her claims have already been

deemed frivolous, and that her abuse of process, conspiracy, and intentional infliction of

emotional distress claims are legally insufficient. ECF No. 31-1. Pal counters that abuse of

process claim is not barred by the litigation privilege, that her allegations regarding the

allegedly fabricated letter were erroneously deemed frivolous, and that her claims are legally

sufficient. ECF No. 45.

All of the SAC's claims against the Private Attorney Defendants arise from one letter

filed in the course of litigation by these defendants. *See* Order, ECF No. 16 (explaining that

Pal's allegations against the Private Lawyer Defendants "relate to their work as defense

counsel in *Pal v. Cipolla*"). In particular, Pal's claims against the Private Attorney Defendants

stem from a letter described by Pal as "Document 295-1," which was filed "as an exhibit to

their Motion to dismiss Plaintiff's complaint in the lawsuit of Pal v. Cipolla et. al." SAC 13.

Pal asserts that the letter, authored by the Assistant State's Attorney Ferencek, contained false

information. *Id.* at 14.

Federal courts "have recognized a federal common law litigation privilege, based on

applicable precepts of state privilege law" to statements made in federal proceedings.

*Moorman v. Bremm*, No. 3:21-CV-1300 (OAW), 2022 WL 5186182, at *7 (D. Conn. Oct. 5,

2022) (applying Connecticut's litigation privilege to statements made during the course of

federal court proceedings). As the Connecticut Supreme Court has explained, "[t]he litigation

privilege is a long-standing common-law rule that communications uttered or published in the

---

State's Attorney Defendants. SAC 22. Count Two thus does not state a claim against the Private
Attorney Defendants.

course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." *Deutsche Bank AG v. Vik*, 349 Conn. 120, 137 (2024) (internal quotation marks and citations omitted). "[T]he privilege [has been] expanded to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding, including, but not limited to, claims for tortious interference, intentional infliction of emotional distress, [and] fraud . . . ." *Id.* The litigation privilege exists precisely to protect "the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation." *Simms v. Seaman*, 308 Conn. 523, 535 (2013).

Count Three claims abuse of process. As Pal observes, claims for abuse of process can fall outside the scope of the litigation privilege. ECF No. 45, at 5. Pal asserts that the Private Attorney Defendants abused process because they filed a letter they knew contained false information "for the purpose of obtaining a dismissal" of the *Pal v. Cipolla* lawsuit. SAC 31. However, merely "affixing the label of 'abuse of the litigation process' to a claim is not sufficient to defeat the assertion of the litigation privilege." *Chien v. Jensen*, No. 3:24-CV-01717 (KAD), 2025 WL 1135407, at *5 (D. Conn. Apr. 16, 2025). Rather, Pal must allege facts supporting a claim for abuse of process.

"The torts of vexatious litigation and abuse of process both prohibit conduct that subverts the underlying purpose of the judicial process. Specifically, these causes of action prevent, or hold an individual liable for, the improper use of the judicial process for an illegitimate purpose, namely, to inflict injury upon another individual in the form of unfounded actions." *MacDermid, Inc. v. Leonetti*, 310 Conn. 616, 631 (2013). As the Connecticut Supreme Court has stressed, to defeat the litigation privilege, "it is not enough for the plaintiff

8

to allege that the misconduct at issue constituted an improper use of the judicial system, but rather, the cause of action itself must challenge the *purpose* of the underlying litigation or litigation conduct." *Dorfman v. Smith*, 342 Conn. 582, 596-97 (2022).

Thus, to state a claim for abuse of process, Pal must allege facts supporting a claim that the Private Attorney Defendants used legal process for an illegitimate purpose. Pal alleges no such facts. Even accepting as true Pal's allegations, attorneys filing a letter containing falsehoods to try to obtain dismissal of a case brought against their clients does not constitute use of the judicial system for an improper purpose for purposes of stating an abuse of process claim under Connecticut law.[5] *Chien*, 2025 WL 1135407, at *6 (stating that even if plaintiff was alleging that defendants "engaged in 'fraud' while representing Freer in prior litigation, such an allegation does not save his claims because they would not adequately allege that the legal processes themselves were initiated for an improper purpose"); *Natiss v. Natiss*, No. 3:24-cv-01581 (MPS), 2025 WL 2675495, at *5 (D. Conn. Sept. 18, 2025) (stating that "falsifying . . . records and testimony does not by itself call into question the purpose of bringing the action").

Thus, I agree with the Private Attorney Defendants that they "did not initiate any proceedings or process, and they certainly did not seek to obtain any 'wrongful purpose for which the proceedings were not designed." ECF 31-1, at 12. Accordingly, Pal has failed to state a claim for abuse of process.

---

[5] Examples of improper purposes include: "(i) using the pleadings as leverage to coerce the payment of a debt or surrendering of property unrelated to the litigation; (ii) using unreasonable force, excessive attachment or extortionate methods to enforce a right of action; or (iii) using the process to gain a collateral advantage extraneous to the merits, e.g., improper use of a subpoena." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (citations omitted).

In addition, I conclude that the litigation privilege applies to Count Four, which alleges civil rights conspiracy, and Count Six, which claims intentional infliction of emotional distress. Both of these claims, as alleged against the Private Attorney Defendants, are based entirely on these attorneys filing a letter to defend their clients against Pal's claims in *Pal v. Cipolla*, a case brought by Pal herself.

In *Simms*, the Connecticut Supreme Court identified the following factors for courts to consider when determining whether a claim is barred by the litigation privilege: "(1) whether the alleged conduct subverts the underlying purpose of a judicial proceeding, in a similar way to how conduct constituting abuse of process and vexatious litigation does; (2) whether the alleged conduct is similar in essential respects to defamatory statements, inasmuch as a defamation action is barred by the privilege; and (3) whether the alleged conduct may be adequately addressed by other available remedies." *Scholz v. Epstein*, 341 Conn. 1, 10-11 (2021) (citing *Simms v. Seaman*, 308 Conn. 523, 545, 52, 59 (2013)). Since *Simms*, the Connecticut Supreme Court "has clarified that these factors and considerations are 'simply instructive,' with the focus being on 'the issues relevant to the competing interests in each case' in light of the 'particular context' of the case." *Scholz*, 341 Conn. at 11 (quoting *Macdermid*, 310 Conn. at 630-31).

Here, the conduct alleged as to the Private Attorney Defendants in Counts Four and Six does not "subvert[] the underlying purpose of a judicial proceeding" in a similar way to abuse of process and vexatious litigation. As noted, the letter was filed by attorneys to support dismissal of Pal's claims. In addition the conduct alleged—making false statements—has similarities to a defamation action, and can be adequately addressed by other remedies, such

as seeking sanctions from the court where the misconduct allegedly occurred.[6] *Natiss*, 2025 WL 2675495, at *5 (noting that "because the claims here are based entirely on Latif's allegedly false statements to the court in the Underlying Action . . . the alleged conduct is similar in essential respects to defamatory statements" and had already been addressed by a request for sanctions) (internal quotation marks omitted).

Accordingly, Pal's claims for conspiracy and intentional infliction of emotional distress cannot succeed against defendants whose only alleged misconduct was squarely in the course of defending clients in litigation. *See Scholz*, 341 Conn. at 19-20 (stating that the litigation privilege applies to "claims premised on factual allegations that challenge the defendant's participation in a properly brought judicial proceeding" and "[t]he privilege extends to pleadings and other papers made a part of a judicial or quasi-judicial proceeding as long as the statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, with the test for relevancy described as generous" even if "the communication is false or malicious") (citations and internal quotation marks omitted); *Simms*, 308 Conn. at 569-70 (applying litigation privilege to a claim of intentional infliction of emotional distress premised on communication made during and relevant to underlying judicial proceeding); *Moorman*, 2022 WL 5186182, at *7 (stating that "the litigation privilege is broad: it provides protection even for allegedly fraudulent statements made in the course of litigation") (internal quotation marks omitted).

---

[6] Indeed, in *Pal v. Cipolla*, Pal filed a Motion for Sanctions against defendants, their attorneys, and their law firm alleging that they "presented the Court with fabricated evidence." *Pal v. Cipolla*, 18-cv-616 (ECF No. 305). The Court denied the motion. *Id.* (ECF No. 312).

Accordingly, I dismiss Counts Three, Four, and Six against the Private Attorney Defendant. Dismissal is with prejudice and without leave to amend. In the ordinary course, a "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). Nonetheless, a court may deny leave to amend where a pleading suffers from substantive defects rather than issues with framing. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of pro se complaint without leave to replead because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it"). Here, the SAC's allegations against the Private Attorney Defendants focus solely on the filing of the letter in court to obtain dismissal of Pal's claims. As discussed, this action does not constitute abuse of process and the SAC's other claims against the Private Attorney Defendants are plainly barred by the litigation privilege. Moreover, Pal already had the opportunity to amend twice following the Court's identification of the litigation privilege as an issue. *See* Order, ECF No. 16; Order, ECF No. 27. Here, Pal's claims suffer from serious substantive defects, and granting leave to amend would be futile.

## B.    State's Attorney Defendants

Other than the claims already dismissed with prejudice by the Court's previous Order, the SAC asserts five claims against the State's Attorney Defendants. Three of the claims are brought under 42 U.S.C. § 1983: denial of equal protection (Count One), discrimination (Count Two), and conspiracy to violate civil rights (Count Four). *See* SAC.[7] The SAC also asserts two

---

[7] Count Two cites § 1981 and § 1983 as a basis for relief, but it is well established that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by §

tort claims: an abuse of process claim (Count Three) and a claim for intentional infliction of emotional distress (Count Four).

The State's Attorney Defendants argue that they are entitled to absolute prosecutorial immunity for all claims. In addition, they argue the abuse of process fails implicate their actions, the conspiracy claim has already been deemed frivolous, and the claim for intentional infliction of emotional distress fails to plead the necessary elements. ECF No. 37-1. Pal responds that the State's Attorney Defendants are not protected by absolute immunity because their actions were investigatory in nature. ECF No. 46.

The Supreme Court has long held that "prosecutors are absolutely immune from liability in § 1983 lawsuits" for prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009); *see also Sanchez v. Doyle*, 254 F. Supp. 2d 266, 274 (D. Conn. 2003) ("Absolute prosecutorial immunity shields conduct that can be characterized as intimately associated with the judicial phase of the criminal process, or alternatively formulated as acting in a role as advocate for the State.") (internal quotation marks and citations omitted); *see also Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 505 (2d Cir. 2004) (holding that absolute immunity shields prosecutors regardless of their motives).

Nevertheless, "absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in, say, investigative or administrative tasks." *Van de Kamp*, 555 U.S. at 342 (internal quotation marks omitted). "[A]s the function test of *Imbler*

---

1981 when the claim is pressed against a state actor" such as the State's Attorney Defendants. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)

recognizes, the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Instead, "[q]ualified immunity represents the norm for executive officers so when a prosecutor functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity." *Id.* (internal quotations and citations omitted). Therefore, when prosecutors act in the role of police officers, for example, "searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested," they enjoy only qualified, not absolute immunity. *Id.*

The SAC alleges that the "sham investigation conducted by Defendants Richard Colangelo, Gary Mecozzi, and Pual Ferencek" was "solely for the purpose of creating a paper trail in the form of the letter depicted in Exhibit 1." SAC 25. That letter explained the decision by the State's Attorneys not to file any criminal charges, due to insufficient evidence, against the alleged wrongdoers from the incident of April 29, 2015. ECF No. 44-1. Rather than complaining about particular actions taken in the course of an investigation, the SAC faults the State's Attorney Defendants for a *lack* of an investigation. *See, e.g.*, SAC 3 ("Plaintiff was never interviewed about her complaint, evidence which was in Plaintiff's possession was never collected, and direct witnesses to the incidents of 4-29-2015 were never interviewed by any investigator."); *id.* at 4 ("This deliberate failure by the Connecticut State's Attorneys to investigate Plaintiff's complaints, is in part, animated by an animus . . . ."). Thus, accepting the SAC's allegations as true, the allegations underlying all of Pal's claims against the State's Attorney Defendants concern the defendants *failure* to undertake investigative work before determining not to bring charges related to the occurrence on April 29, 2015.

14

The Supreme Court has held that because a prosecutor "is absolutely immune from liability for the decision to prosecute," an "action for retaliatory prosecution will not be brought against the prosecutor." *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006) (citation omitted); *see also Van de Kamp*, 555 U.S. at 343 (stating that "we have held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding").[8]

Courts in this Circuit have held that a prosecutor's decision *not* to bring charges is entitled to absolute immunity. *See Alvarez v. Doe*, No. 03-CV-7740, 2004 WL 1874972, at *4 (S.D.N.Y. Aug. 13, 2004) (absolute immunity for a prosecutor also covers actions "in connection with the decision whether or not to commence a prosecution"). Courts have also held that prosecutors are protected by absolute immunity for declining to investigate. *See, e.g.*, *Brady v. Schneiderman*, No. 15-CV-9141 (RA), 2016 WL 3906737, at *3, n.1 (S.D.N.Y. July 13, 2016) ("Numerous courts have held that a prosecutor's decision not to investigate is entitled to absolute immunity because the decision not to investigate is so closely intertwined with the decision not to prosecute that to deny immunity for failure to investigate would offer an obvious means to circumvent the doctrine of prosecutorial immunity.") (internal quotation marks omitted), *aff'd*, 714 F. App'x 60 (2d Cir. 2018); *Johnson v. Carrasquilla*, No. 3:17-CV-1429 (MPS), 2018 WL 4963165, at *10 (D. Conn. Oct. 15, 2018) ("[C]laims based on an alleged failure to investigate come within the absolute immunity afforded by *Imbler [v.*

---

[8] Although Defendant Mecozzi himself is not a prosecutor, courts have held that "[b]ecause absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995); *see also Goncalves v. Reynolds*, 198 F. Supp. 2d 278, 281 (W.D.N.Y. 2001) ("Likewise, an investigator or other nonjudicial officer is entitled to the same absolute immunity enjoyed by a prosecutor for acts that are (1) intimately related to the judicial process and (2) taken at the direction of the prosecutor.").

*Pachtman*, 424 U.S. 409 (1976)].") (internal quotation marks omitted), *aff'd sub nom. Miller v. Carrasquilla*, 830 F. App'x 42 (2d Cir. 2020).[9]

Prosecutorial immunity extends not only to the claims brought under § 1983, but also under state tort law. *See Van de Kamp*, 555 U.S. at 341 ("In concluding that the prosecutor was absolutely immune, the Court pointed out . . . that the law had also granted prosecutors absolute immunity from common-law tort actions, say, those underlying a decision to initiate a prosecution.") (internal quotation marks omitted); *see also Barese v. Clark*, 62 Conn. App. 58, 59 (2001) (holding that "we conclude that state's attorneys are immune from tort liability for acts committed in the performance of their duties as state's attorneys").

Pal argues that the State's Attorney Defendants were acting in an "investigatory capacity" when they failed to investigate her complaints as there was no judicial process ongoing at the time nor any preparation for such a process. ECF No. 46, at 5. However, even if I were to accept Pal's view that the State's Attorney Defendants are not entitled to absolute immunity because they were acting in an investigative capacity, the SAC fails to state plausible claims against the State's Attorney Defendants.

_____

[9] *See also Tabor v. New York City*, No. 1l-CV-195 (FB) (CLP), 2012 WL 603561, at *5 (E.D.N.Y. Feb. 23, 2012) ("[P]rosecutors are entitled to absolute immunity when accused of a failure to investigate."), *adopted by* No. 11-CV-195 (FB), 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012); *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469 (W.D.N.Y. 2013) ("Plaintiff here attempts to cast this claim in terms of an alleged failure to conduct a thorough investigation, but that does not render the complained-of conduct 'investigatory' in nature."), *aff'd*, 556 F. App'x 5 (2d Cir. 2014); *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d 1183, 1194 (10th Cir. 2008) ("Deciding whether to bring charges—which necessarily includes an evaluation of whether there has been sufficient investigation to support charges—is a quintessential prosecutorial function protected by absolute immunity.").

In particular, with respect to Counts One and Two, which allege discrimination in violation of the Fourteenth Amendment, the SAC's allegations that the actions of these defendants were based on race, gender, national origin, and perceived religion are wholly conclusory. To state an equal protection claim, a plaintiff must demonstrate evidence of "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011). The SAC states in conclusory terms that the State's Attorney Defendants acted with "discriminatory animus." *See, e.g.*, SAC 22. But the SAC alleges no facts supporting discriminatory intent—such as allegations that State's Attorney Defendants made discriminatory remarks or allegations showing that her complaints were differently from those of similarly situated individuals of different races, genders, national origins or perceived religions. *See Gainey v. Pagel*, No. 3:21-CV-43 (SRU), 2021 WL 2400256, at *3 (D. Conn. June 11, 2021) (dismissing equal protection claim where plaintiff only provided conclusory allegation that defendants' actions were "racially motivated"). Accordingly, Counts One and Two fail to state a plausible claim. For the same reason, Count Four's claim for conspiracy to violate the Fourteenth Amendment fails to state a claim.

Count Five, abuse of process, fails to state a plausible claim against the State's Attorney Defendants. The only allegation relating to the State's Attorney Defendants as to this claim is that they gave the letter to the Private Attorney Defendants for the purpose of obtaining

17

dismissal of *Pal v. Cipolla*. As described above, this allegation does not state a claim for abuse

of process against the Private Attorney Defendants and similarly does not state a claim against

the State's Attorney Defendants. Finally, Count Six fails to state a claim for intentional

infliction of emotional distress because the SAC does not allege that the State's Attorneys

intended to cause Pal emotional distress or allege conduct sufficiently "extreme and

outrageous."[10] Moreover, even if these state law torts were adequately pleaded, I would decline

to exercise supplemental jurisdiction over them given my dismissal of all federal claims against

the State's Attorney Defendants.

Pal has already had multiple opportunities to amend her complaint to try to state valid

claims against the State's Attorney Defendants. Because I conclude that repleading again

would be futile, Pal's claims against the State's Attorney Defendants are dismissed with

prejudice and without leave to amend.

### C.    Doe Defendants

The SAC includes claims against the Doe Defendants.

Notably, the only specific factual allegation in the SAC regarding a Doe Defendant is

in Count Four (the conspiracy claim), which alleges that the letter ultimately filed in *Pal v.*

*Cipolla* may have been provided through a Doe defendant to the Private Attorney Defendants.

Such a speculative and conclusory statement does not suffice to state a claim against a Doe

---

[10] "To set out a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.'" *Doe by & through Boyd v. Smereczynsky*, No. 3:16-CV-00394 (MPS), 2018 WL 4266084, at *8 (D. Conn. Sept. 6, 2018) (quoting *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000)).

defendant. In any event, the limitations period to file a section 1983 action in Connecticut is three years. *See Rodriguez v. Doe*, No. 3:22-CV-763 (MPS), 2023 WL 3200228, at *3 (D. Conn. May 2, 2023). "John Doe pleadings cannot be used to circumvent statutes of limitations because replacing a John Doe with a named party in effect constitutes a change in the party sued." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (internal quotation marks omitted).

The SAC asserts claims for actions only up to February 15, 2023. *See* SAC 35 ("The concealment was intentional and continued until 2-15-2023 when James Tallberg, Andrew Glass and Patrick Allen revealed it by filing the letter in EXHIBIT 1 and using it as a basis to seek dismissal of Plaintiff's claims in Pal v. Cipolla et. al."). Since that time, more than three years have elapsed, and Pal has still not substituted named defendants. Thus, no matter the validity of the claims against the Doe Defendants or their possible identities, all claims against the Doe Defendants are dismissed on the grounds that Pal failed to identify them or provide the names within the limitations period.

## IV.   CONCLUSION

For the forgoing reasons, I grant the Private Attorney Defendants' Motion to Dismiss, ECF No. 58, and the State's Attorney Defendants' Motion to Dismiss, ECF No. 51. All claims against all Defendants are dismissed with prejudice. As I have dismissed all claims in this case, Pal's Motion for Preservation of Evidence, ECF No. 43, is found as moot.

The Clerk is respectfully directed to close this case.

**SO ORDERED.**

New Haven, Connecticut
March 6, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

19